**STATE ex HOEFLICH v INDUST. COMM.**

Ohio Appeals, 2nd Dist, Franklin Co

No 3221. Decided Feb 25, 1941

# 610

Cowan, Adams & Adams, Columbus, for relator.

Thomas J. Herbert, Attorney General, Columbus, and E. P. Felker, Asst. Atty. General, Columbus, for respondent.

## OPINION

BY THE COURT:

The above-entitled cause is now being determined on respondent's demurrer to relator's petition.

The grounds of demurrer are as follows:

"1. That said petition shows on its face that the relator has been guilty of laches in the presentation and prosecution of her pretended claim.

"2. That said petition does not state facts which show a cause of action in mandamus."

Relator's petition, omitting mere formal allegations, sets out in substance the following:

On November 18, 1931, and for some time prior thereto George Hoeflich was in the employ of the Syracuse Mining Company, Pomeroy, Ohio; that said employer had complied with the Workmen's Compensation Law of Ohio by paying premiums into the state insurance fund: that on November 18, 1931, while in the course of and arising out of his employment with said employer, said George Hoeflich was caught in a slate fall in a mine, receiving injuries which killed him instantly; that the relator, Lena Hoeflich, widow of said George Hoeflich, duly filed with the Industrial Commission her application for compensation, claiming compensation for the death of her husband as provided by the Workmen's Compensation Law.

It is further set out in the petition that pursuant to relator's application her claim was allowed by the respondents and she was awarded compensation for a period of 416 weeks, beginning November 21, 1931, which award ran until and expired on November 23, 1939; that in accordance with said Workmen's Compensation Law said award was granted and made payable at the rate of two-thirds of the decedent's average weekly wage at the time of his injury; that on March 7, 1932, the respondent fixed the average weekly wage for the payment of benefits and compensation at $12.90; that the wage of $12.90 was computed on the decedent's earnings for one year prior to his injury and death and was the decedent's average weekly wage for one year prior to his injury and death; that based on said average weekly wage for one year prior to the decedent's injury and death said death award was payable to relator at the rate of $8.66 per week.

Relator further says that the decedent's average weekly wage at the time of his injury was considerably higher than his average weekly wage for a year prior to said injury; that his average weekly wage at the time of his injury was between $18.00 per week and $19.24 per week.

Relator further says that on October 11, 1939, she duly filed with the respondent an application calling respondent's attention to the fact that the death award had theretofore been granted for a period of 416 weeks, but that said award had been payable on a wage of $12.90 per week, such wage being computed over a period of one year prior to the decedent's injury and death; that said application further pointed out that the decedent's average weekly wage at the time of his injury and death was considerably higher than the average weekly wage for a year prior to the injury and death and requested the respondent to fix the de-

cedent's average weekly wage at the time of his injury and death and adjust said death award upon the wage so fixed.

It is further alleged in the petition that relator's application was considered by the respondent on February 28, 1940, at which time the following order was made:

"This matter coming on for hearing upon the application to modify previous award, wherein the claimant seeks to have the average weekly wage determined at a higher rate than was heretofore fixed. It would appear that the average weekly wage in this case was originally fixed at $11.55 per week on or about January 22, 1932, and that subsequent thereto on or about March 7th the average weekly wage was determined to be $12.00 per week and the award has been paid on that basis, and that no further application has been made by the claimant on this question until the present application was filed on October 11, 1939. It is ordered that said application be and the same hereby is dismissed."

The relator in her petition further alleges that all the evidence before the respondent shows that the decedent's average weekly wage at the time of his injury was between $18.00 and $19.24; that the said order of the Industrial Commission awarding compensation on the average weekly wage for a year prior to the decedent's injury is contrary to law, arbitrary and unreasonable; that the Commission's order of February 28, 1940, dismissing the relator's application to adjust the wage and refusing to fix the decedent's average weekly wage at the time of his injury and adjust the compensation granted under the original award upon the wage so fixed was arbitrary, unreasonable and contrary to law; that the Commission is enjoined by law to fix the decedent's weekly wage at the time of his injury and to pay his death award upon the wage so fixed rather than upon the average yearly wage for one year prior to the injury.

The prayer of the petition asks that the writ of mandamus be issued ordering the respondent to compute and fix the decedent's average weekly wage at the time of his injury and ordering said respondent to pay said death award of 416 weeks upon the average weekly wage at the time of decedent's injury as so fixed, and for such other relief as may be proper.

For many years the Industrial Commission, under their rule, determined a claimant's average weekly wage at the time of his injury on the basis of his total wages for the year, divided by 52.

In November, 1934, the Supreme Court of Ohio in the case of **State ex Kildow v Industrial Commission of Ohio, 128 Oh St 573**, made the very definite pronouncement that this method of determining the average weekly wage was inaccurate.

Special emphasis was put on the words "at the time of the injury". The question was again presented and considered by the Supreme Court in the case of **State ex Brownell v Industrial Commission of Ohio, 131 Oh St 124**, and in **State ex Treat v Industrial Commission, 135 Oh St 524**. All of these cases disclose that the Supreme Court has not been able to definitely state the number of weeks to be used as a basis for determining average weekly wage, but it is stated that it must be more than one week, and such further number of weeks as under the facts of each particular case would reflect an average weekly wage at the time of the injury.

These comparatively recent decisions of the Supreme Court have brought forth applications for adjustments going back a number of years. The Industrial Commission in several reported cases have met these applications with the defense of laches. The latest case before the Supreme Court is **State ex Amburns v The Industrial Commission, 130 Oh St 152**. In this case a writ was denied where the pleadings disclosed that more than twelve years had passed since the original determination of the award, and more than

**612**

four and one-half years after it had been completely paid and the case closed.

Our Court had under consideration the indentical question which was decided October 26, 1938, in State ex Boris v The Industrial Commission, 28 Abs 244. The 4th syllabus reads as follows:

"A right of action which accrued on a workmen's compensation award ten years before a writ of mandamus was sought to correct it is lost through laches which demanded a denial of the writ."

This case so fully discusses the principle involved in the instant case that we are able to materially shorten this opinion by merely making reference to our former decision. In the instant case the period of time elapsing since the making of the original determination and the filing of the mandamus action was approximately eight years. In the reported case the elapsed time was ten years.

In both cases the payments were being continued at the time of bringing the action. In the instant case the period would have expired in about six weeks, where as in the reported case the payments would have continued for a longer period. In the reported case we applied the principles announced in the Amburns case, 130 Oh St 152, supra.

We think the reasoning in our former decision applies to the situation presented in the instant case.

We therefore sustain the demurrer.

If desired, relator may have 20 days to file an amended petition; otherwise the cause will be dismised and costs taxed.

GEIGER, PJ., BARNES & HORNBECK, JJ., concur.